1  ALSCHULER GROSSMAN STEIN & KAHAN LLP
   John A. Schwimmer (No. 109861)
2  Jonathan A. Loeb (No. 162758)
   David B. Dreyfus (No. 199403)
3  2049 Century Park East
   Thirty-Ninth Floor
4  Los Angeles, CA 90067-3213
   Telephone: (310) 277-1226
5  Facsimile: (310) 552-6077

6  Attorneys for Defendant and Counter-claimant
   PhyCor, Inc.

7

**THIS CONSTITUTES NOTICE OF ENTRY**
**AS REQUIRED BY FRCP, RULE 77(d).**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA



10

| | |
|---|---|
| 11  PREM REDDY, M.D., an individual, | CASE NO. CV 00-8486 R (MCx) |
| 12            Plaintiff, | [~~PROPOSED~~] FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF PRELIMINARY |
| 13       vs. | INJUNCTION [FRCP 52(a)] |
| 14  HARRY LIFSCHUTZ, M.D., an individual; PHYCOR, INC., a | |
| 15  Tennessee corporation; and DOES 1 through 50, inclusive, | |
| 16            Defendants, | |
| 17 | |
| 18  PHYCOR, INC., a Tennessee corporation, | The Honorable Manuel L. Real |
| 19            Counterclaimant, | [Related to Case No. CV-99-1129R (MCx)] |
| 20       vs. | |
| 21  PREM REDDY, M.D., an | |
| 22  individual, LEX REDDY, an individual, and Roes 1 through | |
| 23  10, | |
| 24            Counter-Defendants. | |

25

26

27       Docketed
         Copies / NTC Sent
28       ___ JS - 5 / JS - 6
         ___ JS - 2 / JS - 3
         ___ CLSD

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

NOV 1 3 2000

Printed on recycled paper

ENTERED
CLERK, U.S DISTRICT COURT
NOV 1 3 2000
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

FILED
CLERK, U.S DISTRICT COURT
NOV - 8 2000
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

LODGED
CLERK, U.S DISTRICT COURT
OCT - 5 2000
CENTRAL DISTRICT OF CALIFORNIA
BY

### FACTUAL FINDINGS

1.  PhyCor, Inc. ("PhyCor") is a physician practice management company that, through its subsidiaries, among other things, acquires and operates multi-speciality medical clinics and develops and manages independent practice associations. (Jones Decl., ¶ 2.)

2.  PrimeCare International, Inc. ("PCI") is a physician practice management company located in Riverside and San Bernardino counties, and is a wholly-owned subsidiary of PhyCor. . (Jones Decl., ¶ 3.)

3.  Plaintiff and Counter-Defendant Prem Reddy was the founder of PCI and, until May 1998, its majority shareholder, owning approximately 80% of the stock of PCI.

4.  Until May 1998, Counter-Defendant Lex Reddy was a shareholder and Executive Vice President and Chief Operating Officer of PCI.

5.  In May 1998, PhyCor, one of its wholly-owned subsidiaries, PCI Merger Corp., PCI, and Prem Reddy entered into an Agreement and Plan of Merger (the "Merger Agreement") dated May 18, 1998, pursuant to which PCI Merger Corp. was merged with and into PCI, and PCI became a wholly-owned subsidiary of PhyCor. (Ex. "A" to PhyCor's ex parte application for temporary restraining order.)[1] Pursuant to the Merger Agreement, Prem Reddy and Lex Reddy agreed to sell all of their stock in PCI to PhyCor in exchange for PhyCor stock. As a result of the merger,

---

[1] All references to an "Exhibit" are to exhibits attached to PhyCor's ex parte application for a temporary restraining order unless otherwise noted.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

2

1  PhyCor acquired beneficial interests in the PCI Medical Group of

2  Desert Valley (the "Group") and Desert Valley Hospital (the

3  "Hospital").

4      6.   Pursuant to and contemporaneously with the Merger

5  Agreement, Prem Reddy signed a Confidentiality and Non-

6  Competition Agreement.  (Ex. "B.")

7      7.   At the same time, and pursuant to the Merger

8  Agreement, Lex Reddy signed a Confidentiality and Non-Competition

9  Agreement.  (Ex. "C.")

10     8.   The covenants not to compete signed by Prem and

11 Lex Reddy provide, in pertinent part, that Prem and Lex Reddy

12 will not, for a period of four years, in the Counties of San

13 Bernardino, Riverside, Orange, or a portion of Los Angeles,

14 directly or indirectly "(i) operate, develop or own any interest

15 other than the ownership of less than five percent (5%) of the

16 equity securities of a publicly traded company . . . in any

17 business which has significant activities . . . or has announced

18 intentions to focus significant resources, relating to the

19 ownership, management or operation of multi-specialty medical

20 clinics, physician group practices, independent practice

21 associations ("IPAs") or other similar entities . . . (ii)

22 compete with [PhyCor] or its subsidiaries and affiliates in the

23 operation or development of any Business . . . (iv) interfere

24 with, solicit, disrupt or attempt to disrupt any past, present or

25 prospective relationship, contractual or otherwise, between

26 [PhyCor], or its subsidiaries or affiliates, and any customer,

27 client, supplier or employee of [PhyCor] . . . (v) solicit any

28 employee of [PhyCor], or its subsidiaries or affiliates, to leave

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

Printed on recycled paper

their employment with [PhyCor] or its subsidiaries or affiliates . . . ." (Exs. "B" and "C.")

9. The non-compete agreements signed by the Reddys are not limited to prohibiting the Reddy's from opening a competing clinic or hiring away PhyCor employees; the non-compete agreement also prohibits the Reddys from interfering in PhyCor's and PCI's existing and prospective business relationships.

10. Pursuant to the terms of the non-competition agreements, neither of the Reddys could acquire ownership interests in either the Hospital or the Group prior to May 2002.

11. PhyCor is engaged in discussions with Dr. Lifschutz, a doctor at the Group, about selling assets of the Group to Dr. Lifschutz and the doctors in the Group. (Jones Decl., ¶ 11.)

12. On July 31, 2000, PhyCor entered into an agreement to negotiate exclusively with Dr. Lifschutz for 60 days. (Ex. "D.")

13. The Reddys have engaged in activities designed to interfere with PhyCor's potential transaction with Dr. Lifschutz.

14. For example, the Reddys have communicated directly with the doctors at the Group to try to dissuade them from supporting Dr. Lifschutz' efforts to purchase the Group's assets from PhyCor and instead support the Reddys' efforts to do so.

15. On July 24, 2000, Prem Reddy wrote a letter to Tom Dent and Tarp Jones, the CEO and CFO of PhyCor, as well as John Dorans, a representative of PhyCor's lenders. In that letter, Prem Reddy stated that he had "received numerous calls from physicians at the Group" and purported to summarize those

4

1  conversations.  (Ex. "E.")  Reddy further contended that "almost

2  all physicians" at the Group "have expressed a deep interest to

3  work with us rather than the current administration."  (Id.)

4  This letter directly contradicts Prem Reddy's declaration

5  testimony that he had no communication whatsoever with any of the

6  doctors in the Group and that he did not return "numerous

7  telephone calls from physician members of the [Group]."  These

8  communications breach the non-competition agreement, in that

9  they interfered with a "present or prospective relationship,

10 contractual or otherwise, between [PhyCor], or its subsidiaries

11 or affiliates, and any customer, client, supplier or employee of

12 [PhyCor]."

13      16.  On August 2, 2000, Lex Reddy called a meeting of

14 all the doctors at the Group, and many of them (other than

15 Dr. Lifschutz) attended that meeting.  At the meeting, Lex Reddy

16 told the Group doctors that Prem and Lex would like to acquire

17 the Group and that, if they did so, Lex and Prem would guarantee

18 the income of the doctors for the next three or four years.

19 (Byrd Decl., ¶¶ 4-7; Hartman Decl., ¶¶ 5-7.)  This conduct

20 violated the non-competition agreement by interfering with

21 PhyCor's negotiations to sell its assets to Dr. Lifschutz or someone

22 else other than the Reddys.

23      17.  While the Reddys' communications with the Group

24 doctors have been focused solely on acquiring the Group, Prem

25 Reddy has asserted that the ownership of the Group and the

26 Hospital could not be split.  In his letter to PhyCor, Reddy

27 contended, "If the Group is separated from the Hospital, in

28 addition to the operation problems, numerous financial conflicts

5

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

Printed on recycled paper

1 will evolve that will undo the transaction in the very near
2 future and result in disastrous consequences to the patients and
3 the physicians.  The Group is an integral part of the Hospital,
4 and anything otherwise, would be a band-aid therapy and would
5 certainly bleed to death shortly."  (Ex. "E.")  The Reddys'
6 interference with PhyCor's efforts to sell the Group have been
7 intended to pressure PhyCor to sell both the Group and the
8 Hospital to the Reddys on terms favorable to the Reddys.

9     18.  The Reddys' conduct described herein has in fact
10 interfered with PhyCor's negotiations with Dr. Lifschutz.
11 (Lifschutz decl., ¶ 4, Jones decl., ¶¶ 11, 18.)

12     19.  On August 4, 2000, PhyCor received two letters
13 from Health Care Property Investors, Inc. ("HCPI"), the REIT that
14 owns the Hospital.  In one letter, the REIT declares default by
15 PCI for failing to post a letter of credit.  The timing of this
16 assertion is suspect, since the default existed for some time.
17 (Jones Decl., ¶ 13.)  In the other letter, HCPI wrote to PhyCor's
18 general counsel, stating that, (1) they would agree to remove
19 PhyCor from the guarantee of the Hospital lease if the Hospital
20 and Group were sold to Reddy, and (2) HCPI would not agree to any
21 assignment of the lease if ownership of the Group and Hospital
22 were bifurcated.  (Ex. "G.")  The Court finds that those letters
23 were stimulated by communications from the Reddys, who were
24 seeking to obtain greater leverage to force PhyCor to sell the
25 Group and the Hospital to them.  This conduct by the Reddys
26 constitutes further actions to interfere with PhyCor's
27 relationship with "any customer, client, supplier or employee of
28 [PhyCor]" in violation of the Reddys' non-competition agreements.

1      20.   Prem Reddy has attempted to dissuade physicians at

2   PhyCor clinics other than PCI from consummating transactions with

3   PhyCor.   Specifically, one of Prem Reddy's attorneys, Richard

4   Hayes, sent correspondence to attorneys representing doctors at

5   various PhyCor clinics around the country who Reddy knows are in

6   the process of negotiating asset purchase agreements with PhyCor.

7   The purpose of those letters was to create controversy and

8   confusion in the hopes of slowing down or preventing those

9   transactions.   (Ex. "I.")   The Court does not believe it was pure

10  coincidence that the solicitation letters were sent to two

11  *separate law firms that were both engaged in negotiations with*

12  PhyCor for the sale of PhyCor clinic assets.   ~~Those letters are~~

13  ~~further evidence of the Reddys' deceptiveness and illegitimate~~

14  ~~motives~~.

15      21.   The Reddys' communications with the doctors of the

16  Group and with the REIT are unlawful because they violate the

17  non-competition agreements.

18      22.   The Reddys expressly agreed that the non-

19  competition provisions of the non-competition agreements are

20  "reasonable and necessary to protect the legitimate interests of

21  [PhyCor]" and that "[PhyCor] would not have consummated the

22  Merger in the absence of such restrictions."   (Exs. "B" and "C.")

23  The Reddys further acknowledged that a violation of the non-

24  competition provisions would result in "irreparable injury" to

25  PhyCor in that ". . . the remedy at law for any violation or

26  threatened violation of such Sections [1 and 2] will be

27  inadequate and that in the event of any such breach, [PhyCor] in

28  addition to any other remedies or damages available to it at law

7

1 or in equity, shall be entitled ʌto temporary injunctive relief

2 before trial from any court of competent jurisdiction as a matter

3 of course and to a permanent injunctive relief without the

4 necessity of proving actual damages." (Id.)

5      23. PhyCor has established a likelihood of success on

6 the merits of its claims for unfair competition and for breach of

7 the non-competition agreements against the Reddys.

8      24. Unless a preliminary injunction is issued against

9 both Prem and Lex Reddy,` PhyCor is likely to suffer irreparable

10 injury.

11

12

### CONCLUSIONS OF LAW

13      1. Section 16601 of the Business and Professions Code

14 provides that a reasonable non-competition agreement executed by

15 "any shareholder of a corporation selling or otherwise disposing

16 of all his shares in said corporation" is enforceable.

17      2. The Merger Agreement satisfies the requirements of

18 Section 16601 as a "sale" pursuant to which a valid non-

19 competition agreement may be executed. See Hilb, Rogal` &

20 Hamilton Ins. Services v. Robb, 33 Cal.App.4th 1812, 1824-1825

21 (1995).

22      3. A covenant not to compete will be enforced to the

23 extent that it is reasonable and necessary in terms of time,

24 activity and territory to protect the buyer's interest. See

25 Vacco Industries, Inc. v. Van Den Berg, 5 Cal.App.4th 34, 48

26 (1992).

27      4. In order to obtain a preliminary injunction, a

28 party must show either (1) likelihood of success on the merits

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

Printed on recycled paper

1  and the possibility of irreparable injury, or (2) the existence

2  of serious questions going to the merits and the balance of

3  hardships tipping in the movant's favor.  See Diamontiney v.

4  Borg, 918 F.2d 783, 795 (9th Cir. 1990).

5        5.    "The critical elements in determining the test to

6  be applied is the relative hardship to the parties.  If the

7  balance of harm tips decidedly toward the plaintiff, then the

8  plaintiff need not show as robust likelihood of success on the

9  merits as when the balance tips less decidedly."  Gilder v. PGA

10  Tour Inc., 936 F.2d 417, 422 (9th Cir. 1991).

11        6.    Probability of success on the merits and the

12  possibility of irreparable harm are "two points on a sliding

13  scale on which the required degree of irreparable harm increases

14  as the probability of success decreases."  Oakland Tribune, Inc.

15  v. Chronicle Publishing Co., 762 F.2d 1372, 1376 (9th Cir. 1985).

16  Due to the high probability of PhyCor's success on the merits,

17  little showing need be made of irreparable harm.

18        7.    The central premise underlying the enforceability

19  of covenants not to compete in connection with the sale of

20  businesses is to prevent the seller from diminishing the value of

21  the business he is selling.  See Vacco Industries, Inc. v. Van

22  Den Berg, 5 Cal.App.4th 34, 48 (1992).  Non-solicitation

23  agreements are commonplace and enforceable in California.  See

24  Loral Corp. v. Moyes, 174 Cal.App.3d 268, 274 (1985).

25        8.    Business and Professions Code section 16600 only

26  voids contractual provisions "by which anyone is restrained from

27  engaging in a lawful profession, trade or business . . . " –

28  restrictions that do not prohibit engaging in a business are not

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

Printed on recycled paper

1 affected by the statute. Lesser restrictions, such as non-
2 solicitation or non-interference provisions, are enforceable.
3 See <u>Loral Corp. v. Moves</u>, 174 Cal.App.3d 268 (1985).

4      9. A contractual provision that recites that a breach
5 of a non-competition agreement constitutes irreparable injury and
6 shall entitle the damaged party to temporary injunctive relief is
7 an important factor in finding irreparable harm. See <u>Uncle B's</u>
8 <u>Bakery, Inc. v. O'Roarke</u>, 920 F. Supp. 1405, 1434-1435 (N.D. Iowa
9 1996); <u>Overholt Crop Ins. Service Co. v. Travis</u>, 941 F.2d 1361,
10 1371 (8th Cir. 1991).

11      10. Where a party has breached a non-competition
12 agreement, the aggrieved party is entitled not only to an
13 injunction, but also to any damages caused by such a breach.
14 Such remedies are not mutually exclusive. See <u>Harvey v. White</u>,
15 213 Cal.App.2d 275, 281-282 (1963).

16      11. The Reddys' scheme to compete with PhyCor not only
17 violates their non-competition agreements, but is unlawful,
18 unfair, or fraudulent within the meaning of California's Unfair
19 Competition Law and constitutes statutory unfair competition.

20      12. Business & Professions Code section 17200
21 provides, among other things, that "[a]s used in this chapter,
22 unfair competition shall mean and include any unlawful, unfair or
23 fraudulent business act or practice and unfair, deceptive, untrue
24 or misleading advertising . . . ."

25      13. "The language of Section [17200] . . . explicitly
26 extends to any 'unlawful, unfair or deceptive business practice'
27 . . . This section was intentionally framed in its broad,
28 sweeping language, precisely to enable judicial tribunals to deal

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

Printed on recycled paper

with 'new schemes' which the fertility of man's invention would contrive. When a scheme is involved which in on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because this scheme is an original one." Barquis v. Merchants Collection Association, 7 Cal.3d 94, 112 (1972).

14.   Injunctive relief is expressly authorized by Business & Professions Code section 17203. The remedies available under Section 17200 are "cumulative to each other and to the remedies or penalties available under all other laws of the State." Calif. Bus. & Prof. Code § 17205; Self-Directed Placement Corp. v. Control Data Corp., 908 F.2d 462, 467 (9th Cir. 1990).

15.   The Reddys' continuing breaches of the non-competition agreements, their deceptive practices aimed at inducing physicians engaged in negotiations with PhyCor to cease such negotiations, their attempts to manipulate HCPI to insist that PhyCor caused the Group and the Hospital to be sold to the Reddys rather than to the Group and Physicians, and their deceptive communications, through Richard Hayes, to physicians and other clinics around the country, all without disclosing that the Reddys are barred from owning the Group or the Hospital without PhyCor's consent, constitute unfair and deceptive business practices that should be enjoined.

16.   A preliminary injunction in this matter will not interfere with the Reddys' "freedom of speech." State and federal courts routinely enjoin speech that courts have determined to be unlawful. See, e.g., Kingsley Books, Inc. v.

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

Printed on recycled paper

1  Brown, 354 U.S. 436 (1957)(enjoining obscenity); Pittsburgh Press

2  Co. v. Human Relations Comm'n, 413 U.S. 376 (1973)(enjoining

3  advertisements that constituted employment discrimination); San

4  Antonio Hospital v. Southern California Council of Carpenters,

5  125 F.3d 1230 (9th Cir. 1997)(enjoining a continuing display of

6  fraudulent banner near a hospital entrance).

7       17.  In the context of enforcing non-competition

8  agreements, courts have routinely entered injunctions prohibiting

9  speech that violates a non-competition agreement.  See, e.g.,

10  Medtronic, Inc. v. Benda, 689 F.2d 645, 658 (7th Cir. 1982);

11  Bramwell v. Airport Blueprint Co., 154 Cal.App.2d 57 (1957).

12

13  Dated: Nov. 8, 2000                                      

                             United States District Judge

14

15  Presented by:

16  ALSCHULER GROSSMAN STEIN & KAHAN LLP

17

18  By:

19      David B. Dreyfus
    Attorneys for Defendant and

20      Counter-claimant PhyCor, Inc.

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Alschuler Grossman Stein & Kahan LLP, 2049 Century Park East, Thirty-Ninth Floor, Los Angeles, California 90067-3213. On October 5, 2000, I served a true copy of the within documents:

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☒ by placing the document(s) listed above in a sealed envelope, with the overnight delivery charge prepaid, addressed as set forth below, and deposited in a box or facility regularly maintained by the overnight service carrier,

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

See Attached List

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 5, 2000

_Tamara Kawashima_
Tamara Kawashima

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

Printed on recycled paper

1

## SERVICE LIST

2

Greg Hafif, Esq.                         Scott Metzger, Esq.
3       Law Offices of Herbet Hafif              401 West A Street
269 West Bonita Avenue                    Suite 2400
4       Claremont, CA  91711-4784                San Diego, CA 92101-7915

5       Mark Krum, Esq.
Christensen, Miller, Fink, Jacobs,
6       Glaser, Weil & Shapiro, LLP
2121 Avenue of the Stars
7       Eighteenth Floor
Los Angeles, CA 90067-5010
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALSCHULER
GROSSMAN
STEIN &
KAHAN LLP

- 2 -

Printed on recycled paper